## TOLMAN v. BOARD OF COM'RS OF ONSLOW COUNTY et al.

(Circuit Court, E. D. North Carolina. July 15, 1905.)

COUNTIES—ISSUANCE OF BONDS TO RAILROAD—VALIDITY UNDER NORTH CAROLINA STATUTE.

Bonds in aid of a railroad were issued by a county of North Carolina after an election held in conformity with the act authorizing the same, and which was legal and valid under the decisions of the Supreme Court of the state, and the county paid the interest thereon for a number of years. Complainant purchased such bonds for value, and without notice of any defect therein. *Held*, that they were valid in his hands, and that taxes levied and collected by the county to pay the interest thereon in compliance with law were held by the county treasurer as the agent and trustee of complainant, and it was his duty to pay the same over on presentation of the coupons.

In Equity.

Rountree & Carr, for complainant.
E. K. Bryan and W. D. McIver, for defendants.

PURNELL, District Judge. This cause coming on to be heard at Wilmington on this, the 1st day of July, 1905, on the bill and answer and evidence taken before the special master, duly appointed by consent, and being fully argued by counsel, the court finds the following facts to wit: Complainant is the owner of. the coupons set out in the bill. The same were issued after the decision of the Supreme Court of North Carolina reported in 116 N. C. 563, 21 S. E. 205 (Wilmington, Onslow & Eastern Carolina Railroad Company v. Commissioners of Onslow county), in which it is held: (1) In submitting to the vote of the electors of a county the question of subscription of county bonds in aid of a railroad a substantial compliance by the county commissioners with chapter 233, p. 439, Acts 1885, as amended by chapter 89, p. 172, Acts 1887, is sufficient, if there be no fraud. (2) Where, at such election, a majority of the qualified voters of the county vote for the subscription, it is the duty of the county commissioners to issue the bonds. Afterwards the parties "compromised and settled all issues between them," and $40,000 in bonds were issued pursuant to such compromise, which compromise was sanctioned by the superior court of Lenoir county, where the suit was pending, as appears by consent judgments entered at spring term, 1896, signed by Hon. Henry R. Starbuck, judge presiding. That the acts authorizing the issue of said bonds were duly passed, it appearing from the journals a majority of each house of the General Assembly as constituted under the Constitution of the state voted aye, and are so recorded on the several readings of the bill, and the nay vote, if any, was not recorded, but, if all the members not recorded had voted nay, the majority would have been for the bill. It cannot be presumed all members not voting would have voted in the negative, but, if they had so voted, the bill would have passed its several readings. Under these circumstances it would be doubtful law, inequitable, and bad arithmetic to defeat legislation by holding otherwise than that the bill passed its several readings in accordance with article 2, § 14, of the Constitution of North Carolina. Taxes have been levied and collected to pay the coupons, representing the interest on the bonds issued under the compromise aforesaid since said bonds were issued, and at the time of the commencement of this suit there was in the hands of E. W. Summersill, the county treasurer of Onslow county, $2,400 collected for this purpose. That special taxes levied for the purpose have been collected from year to year and paid over on similar coupons representing the interest on the bonds aforesaid from January 1, 1896, until January, 1904. (This is admitted, as are also the jurisdictional allegations in the bill.) That complainant purchased the bonds and coupons the subject of this suit for a valuable consideration, and without notice. That the amount, to wit, $2,400, was collected from the taxpayers of Onslow county under a levy made by the board of commissioners in pursuance to powers conferred upon said board, and is in the hands of the treasurer of said county for the purpose of paying the interest on said bonds payable on the 1st day of January, 1904, and the respondent Summersill is the treasurer or agent of the said bond or coupon

holders, and holds the said sum of money in trust for their use, but is restrained from paying over the same by an injunction issued by the superior court in a proceeding by the board of county commissioners to which complainant and other bondholders were not parties. These are the only facts deemed necessary to be found by the court for a proper determination of this cause, and other allegations appearing in the record and the testimony taken are ignored as immaterial, but without prejudice.

The cases of Stanley County v. Coler, 190 U. S. 437, 23 Sup. Ct. 811, 47 L. Ed. 1126; Id., 113 Fed. 705, 51 C. C. A. 379; Wilkes County v. Coler, 190 U. S. 107, 23 Sup. Ct. 738, 47 L. Ed. 971; Id., 113 Fed. 725, 51 C. C. A. 399, seem to be conclusive. It is therefore ordered, adjudged, and decreed:

1. That the interest coupons the subject of this suit are valid obligations of the county of Onslow, state of North Carolina.

2. That the county treasurer, E. W. Summersill, holds the proceeds of taxes levied and collected to pay the interest on the bonds, to which said coupons are or were attached is a trustee for the holders of said coupons and holds the fund derived from the taxes levied and collected for the payment of the interest represented by said coupons, to wit, $2,400, in trust for the payment of such interest aforesaid.

3. That said county treasurer, the holders of said coupons not being parties to the proceedings in the state court, ought to pay said funds to the holders of said coupons, but this court is not by this to be understood as advising or requiring said officer to disobey or disregard the process of the superior court.